**SAENZ MOTORS, Appellant,**

v.

**BIG H. AUTO AUCTION, INC.,
Appellee.**

**No. 2527cv.**

Court of Appeals of Texas,
Corpus Christi.

March 31, 1983.
Rehearing Denied May 19, 1983.

William E. Corcoran, Cardenas & Whitis, McAllen, for appellant.

William T. Green, III, Houston, George E. Renneberg, Conroe, for appellee.

Before BISSETT, YOUNG and KENNEDY, JJ.

## OPINION

BISSETT, Justice.

This is an appeal from a judgment which was rendered in an action brought under Chapter 17, Subchapter E of the Tex.Bus. & Com.Code Ann. (Texas Deceptive Trade Act), hereinafter referred to as "DTPA," and under the provisions of Tex.Bus. & Comm.Code Ann. arts. 2.301 et seq.

Suit was instituted by Saenz Motors ("Saenz"), a used car dealer in McAllen, Texas, against Big H Auto Auction, Inc. ("Big H."), an automobile auctioneer in Houston, Texas. Saenz alleged in its petition that he purchased two automobiles from Big H. in December, 1978, and that these automobiles were subsequently confiscated by the Department of Public Safety as stolen vehicles, resulting in a breach of implied warranties of title. It was further alleged that Saenz was a "consumer" as that term is defined in the DTPA, and that Big H. made certain misrepresentations to it of a material nature in connection with the sale of the automobiles; and that Big H. was a "seller" and "merchant" under the provisions of the DTPA. Saenz prayed for a recovery of its actual damages sustained and that those damages be trebled. It further prayed for recovery of interest on such automobiles and for an award of attorney's fees and costs.

Big H., defendant, filed a general denial in the action brought against it by Saenz. It also filed a cross-action against Bobby Minter, wherein it sought a recovery against Minter for all liability, costs and expenses, including attorney's fees, which it might suffer as a result of the suit filed against it by Saenz. Bobby Minter died and Clara Mae Minter, as Independent Executrix of the Estate of Bobby Rees Minter, Sr., Deceased, was substituted as cross-defendant. The Executrix then filed a general denial to the cross-action.

Following a trial to the court, a jury having been waived, judgment was rendered on Saenz's actions under Tex.Bus. & Comm.Code Ann. arts. 2.301 et seq. It was decreed that Saenz recover actual damages in the amount of $9,340.00, for breach of implied warranties of title, pre-judgment interest thereon at the rate of six percent (6%) per annum, and post-judgment interest thereon at the rate of nine percent (9%) per annum, and costs. The judgment further decreed that Big H. recover $9,340.00 from "the Estate of Bobby Minter," plus costs recovered by Saenz against Big H.

Saenz presents two points of error. They read, as follows:

"POINT OF ERROR NO. 1: The trial court committed reversible error in failing to find that Saenz Motors qualified as a consumer under the Deceptive Trade Practices Act and to thereby treble the award of actual damages and to award attorney's fees to Saenz Motors.

POINT OF ERROR NO. 2: The trial court committed reversible error in finding that Saenz Motors did not have a right to recover attorney's fees for appeal of the trial court judgment."

Big H. presents two cross-points. They read, as follows:

### "First Cross-Point

The trial court erred in awarding appellant judgment on its breach of warranty cause of action.

### Second Cross-Point

The trial court erred in denying appellee recovery of its attorney fees from the Estate of Bobby Minter, Deceased."

Clara Mae Minter, as Independent Executrix of the Estate of Bobby Minter, De-

ceased, did not perfect an appeal from that portion of the judgment which awarded Big H. a recovery of $9,340.00 and costs "against the Estate of Bobby Minter." She did not file a reply brief in response to Big H.'s second cross-point.

The threshold question here presented is whether Saenz alleged a claim to relief under Section 17.50 of the DTPA as required by Section 17.46. As noted, the only pleading filed by Big H. in the action brought by Saenz was a general denial. It did not specially except to any allegations contained in Saenz's petition, nor did it plead any affirmative defense to the cause of action asserted against it by Saenz. A broad and liberal construction of the petition will justify a holding that the allegations of facts asserted therein, absent special exceptions, are sufficient to allege that Saenz is a consumer within the definition of Section 17.45 under the 1977 amendments to the DTPA, and that Saenz has sufficiently alleged a claim for relief under Section 17.50.

It is further noted that the acts complained of by Saenz occurred in December, 1978; the suit was filed on August 20, 1979. Therefore, the 1977 amendments of the DTPA control the disposition of this case.

■ The next question to be answered is whether Saenz is a "consumer" for DTPA purposes. We hold that it is.

"Two general rules of construction predominate in determining consumer status. First, Section 17.44 explicitly directs that the Act 'be liberally construed and applied to promote its underlying purposes.' Second, if no exemption for a specific act or practice appears in the DTPA, then this will be viewed as evincing a legislative intent not to exempt the transaction from the Act. The effect of these rules is that unless a clear legislative attempt to exempt a transaction exists, the courts will hold that the acts or practices in question are subject to the Act." 33 Baylor L.Rev. 533–580 (1981), at pages 544–545. We apply those general rules to the case at bar.

The controlling principles of construction in DTPA cases were set out in *Woods v. Littleton*, 554 S.W.2d 662 (Tex.1977). They need not be repeated here, but suffice it to say that the emphasis is on the intention of the legislature as determined from the entire Act.

In *Otto, Inc. v. Cotton Salvage & Sales, Inc.*, 609 S.W.2d 590 (Tex.Civ.App.—Corpus Christi 1980, writ dism'd), this Court set out, in depth, why a purchaser who buys for resale can in fact qualify as a consumer under the 1977 version of the DTPA. As we pointed out in *Otto*, "we feel that the clear intention of the legislature has been to expand the DTPA into a commercial setting." *Otto* at 594. See also, *U.S. Steel Corp. v. Fiberglass Specialties, Inc.*, 638 S.W.2d 950 (Tex.App.—Tyler 1982, no writ); *Bamujally v. McDonough*, 508 F.Supp. 574 (S.D.Tex.1981); *Gable v. Wood*, 622 S.W.2d 884 (Tex.Civ.App.—Fort Worth 1981, writ dism'd); and *Indust-Ri-Chem Laboratory, Inc. v. Par-Pak Co., Inc.*, 602 S.W.2d 282 (Tex.Civ.App.—Dallas 1980, no writ). We have re-examined *Otto* in light of this appeal, and now reaffirm our opinion that the definition of a "consumer" under the 1977 version of the DTPA extends to a purchaser who buys for resale.

Having decided that Saenz *does* qualify as a consumer under the DTPA, we must now determine if, in fact, it has established that it *is* a consumer under the DTPA. The Supreme Court in *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535 (Tex.1981), set forth a two-prong test to determine if a purchaser qualifies as a consumer under the DTPA. First, the purchaser must have sought or acquired goods or services by purchase or lease. Second, the goods or services purchased or leased must form the basis of the complaint. *Cameron* at 539. Saenz satisfies both of these requirements. It is stipulated in the record that Saenz paid Big H. $4,345.00 for the 1976 Dodge Van and $4,995.00 for the 1977 Thunderbird. Further, it is due to a dispute relating to the warranty of title to these vehicles that this lawsuit was initiated.

The record shows that Big H. purchased the two automobiles in question from Bob-

by Minter on December 20, 1978. Saenz is a used car dealer and Big H. is an automobile auctioneer. On December 20, 1978, Saenz purchased a 1976 Dodge and a 1977 Ford Thunderbird from Big H. The purchase price for the vehicles was $9,340.00, which was paid to Big H. by Saenz. On the same day, December 20, 1978, Big H. assigned the ownership of the vehicles to Saenz. The assignments of title were based on a certified copy of the original Texas Certificate of Title. Following the purchase of the vehicles, Saenz sold them to certain named individuals. Shortly after those sales, the purchasers were notified by the Texas Highway Department that Certificates of Title would not be issued on the vehicles because of reports that the vehicles were stolen vehicles. Whereupon, the purchasers returned the vehicles to Saenz, and the latter substituted other vehicles therefor.

On March 30, 1979, the Texas Department of Public Safety filed a "Schedule of Seized Stolen Property" in the County Court of Law of Hidalgo County, Texas, which stated that it had reliable and credible information that the vehicles, which were then in the possession of Saenz, had been stolen. On June 4, 1979, the district court of Harris County, Texas, ordered that the vehicles be delivered to a named individual in Houston, Texas, "pending a determination of ownership hearing to be held June 13, 1979." A hearing was held on June 13, 1979. While a certified copy of the order which was rendered following the hearing is not in the record, Henry Saenz testified that it was decreed that Saenz Motors was not the owner of the vehicles. Thereafter, Saenz contacted Big H. and demanded that it make restitution of the money which Saenz had paid to it for the vehicles. Big H. refused to do so.

The trial court, in its findings of fact found: 1) Saenz purchased for resale a 1976 Dodge and a 1977 Ford "T-bird" from Big H. on December 18, 1978 for $9,340.00; 2) both automobiles were acquired by Big H. from Bobby Minter; 3) Saenz received certified copies of the original certificates of title for the automobiles from Big H.; 4) Saenz is in the business of buying cars for resale; 5) Big H. is in the business of auctioning automobiles, and in connection with the conduct of its business reassigns titles to automobiles purchased at auction by dealers such as Saenz; 6) the automobiles were stolen vehicles; 7) Saenz sold the automobiles to its customers; 8) Saenz made restitution to its customers who bought the automobiles; 9) Saenz is not a consumer within the meaning of the DTPA; 10) Saenz did not rely on any representations made by Big H.

The trial court, in its conclusions of law, concluded: 1) Saenz was entitled to recover $9,340.00 from Big H. "for breach of implied warranty of title pursuant to Section 2.301 et seq. of the Texas Business and Commerce Code," plus prejudgment interest from January 1, 1980 at the rate of 6% per annum, and post-judgment interest at the rate of 9% per annum; 2) Big H. "is entitled to judgment for indemnity against the Estate of Bobby Minter for all sums paid by Big H. Auction, Inc., to Saenz Motors"; 3) Saenz "is not entitled to recover on its cause of action based on the Deceptive Trade Practices Act." The finding that Saenz "is not a consumer within the meaning of the DTPA" is the only "finding" that is attacked in this appeal. That finding is a misnomer. The question of whether a plaintiff is a consumer is a question of law to be determined by the trial court from the evidence. The finding is a conclusion of law and we treat it as such in this appeal.

There is no evidence that Big H. made any misrepresentations to Saenz with respect to the sale of the vehicles in question. Neither of the assignments of ownership of the vehicles contain any express warranty of title. Therefore, we must now determine whether the DTPA authorizes a recovery of treble damages for breach of an implied warranty of title, and if so, whether the facts of this case establish an implied breach of warranty of title.

Section 17.50 of the DTPA as it existed pursuant to the 1977 amendments, in pertinent part, provided:

"(a) A consumer may maintain an action if he has been affected by any of the following:

\* \* \* \* \* \*

(2) Breach of an express or implied warranty."

We hold that there has been a breach of an implied warranty of title to each of the vehicles involved in this case. There is ample evidence to show that the Department of Public Safety took the vehicles from the possession of Saenz, for whatever reason. Possession was never restored to Saenz and he was required to make restitution to his customers.

 The buyer of a stolen vehicle fails as matter of law to get a good title. *Jamison v. Stockwell,* 405 S.W.2d 618 (Tex.Civ. App.—Dallas 1966, writ ref'd n.r.e.). And, while this is in keeping with the trial court's seventh finding of fact, under the Texas Business and Commerce Code, a breach of warranty of title will be established merely by showing that there is a disturbance of quiet possession. § 2.312 Official Comment (1968).

 The fact that the vehicles were taken from the buyer's possession by the Department of Public Safety acting upon their own information that they were stolen and were never returned to the buyer, is sufficient to establish a breach of the warranty of title, regardless of whether or not it is ever established that the vehicles were in fact stolen. See, *Trial v. McCoy,* 553 S.W.2d 199 (Tex.Civ.App.—El Paso (1977), appeal after remand 581 S.W.2d 792); and, *H.E.D. Sales, Inc. v. Szelc,* 596 S.W.2d 299 (Tex.Civ.App.—Houston [14th Dist.] 1980, rev'd in part 603 S.W.2d 803 (1980)).

Big H. relies on our holding in *South Texas Bank v. Renteria,* 523 S.W.2d 780 (Tex.Civ.App.—Corpus Christi 1975, no writ), to support its contention that Tex. Rev.Civ.Stat.Ann., art. 6687–1, § 36, provides that a holder of a "certified copy" of title is placed upon notice that he is obtaining only such title as the seller may have, and thus Saenz is excluded from asserting an implied breach of warranty of title. We do not agree.

As we expressed in *Renteria,* it was the intent of the legislature "that an innocent purchaser for value who deraigns title through a regular chain of transfers under the original certificate of title and who takes possession of the vehicle should prevail against a purchaser who deraigns title under a certified copy of the original certificate." We believe that Section 36 of the Act was intended to protect the innocent purchaser, and not to shield the seller from an action to recover for breach of an implied warranty of title.

Having found that Saenz is in fact a consumer, and that Big H. did breach an implied warranty of title to Saenz, we have no choice but to award Saenz treble damages and attorney's fees under the Code. *Mitchell v. Webb,* 591 S.W.2d 547 (Tex.Civ. App.—Fort Worth 1979, no writ); *Flintkote Supply Company, v. Thompson,* 607 S.W.2d 41 (Tex.Civ.App.—Beaumont 1980, no writ); *Indust-Ri-Chem Laboratory, Inc. v. Par-Pak Company, Inc.,* supra; *Trial v. McCoy,* supra; and *Mercer v. Long Mfg. N.C., Inc.,* 665 F.2d 61 (5th Cir.1980). Saenz's first point of error is sustained, and Big H.'s first cross-point is overruled.

Next, we consider Saenz's second point of error, wherein he complains of the failure of the trial court to award attorney's fees to it. The phraseology of the point presents some difficulties. As written, the point complains only of the failure to award attorney's fees "for appeal of the trial court judgment." Thus, it is a complaint only for failure to award attorney's fees for legal services rendered in the appellate courts. However, when the Argument and Authorities, together with the point itself is considered, it is clear that Saenz is complaining of the failure of the trial court to award attorney's fees for legal services rendered in the trial of the case as well as attorney's fees if an appeal is perfected from the judgment. We, therefore, treat the point as one which complains of the failure to award attorney's fees for legal services rendered in the trial court as well as attorney's fees in the event of an appeal. See *Bass v.*

*Metzger,* 569 S.W.2d 917, 923 (Tex.Civ.App.
—Corpus Christi 1978, writ ref'd n.r.e.).

Attorneys for Saenz, Big H. and Clara Mae Minter, Independent Executrix of the Estate of Bobby Rees Minter, Sr., Deceased, were present at the trial. Those attorneys stipulated that: $3,500.00 is a reasonable attorney's fee for legal services furnished by Saenz's attorneys "for the preparation for trial and the trial of this cause"; 2) $1,500.00 is a reasonable attorney's fee to the attorneys "for an appeal to the Court of Civil Appeals"; and 3) $750.00 is a reasonable fee to the attorneys for the prosecution of, or the defense of, "a writ to the Texas Supreme Court." Since we have held that Saenz is a consumer under the DTPA, and that Big H. has breached its implied warranties of title, the attorney's fees as stipulated should have been awarded to Saenz in the judgment. Saenz's second point of error is sustained.

In its second cross-point of error, Big H. contends that the trial court erred in denying it recovery of its attorney fees from the Estate of Bobby Minter, deceased.

■ Different rules have been established to govern the procedures an appellee must comply with in order to raise a cross-point on appeal. If the trial judgment is appealed in its entirety, an appellee does not have to pursue a separate appeal. However, a separate appeal is necessary for the presentment of points of error asserted by the appellee when the judgment is definitely severable and the appellant strictly limits the scope of its appeal to a severable portion thereof. *Cameron & Willacy Counties v. Gonzalez,* 614 S.W.2d 585 (Tex.Civ. App.—Corpus Christi 1981, writ ref'd n.r.e.). Finally, the courts seem in complete accord that a Court of Appeals has no jurisdiction to consider a cross-point of error where the appellee failed to apprise the trial court in some manner of its complaints or objections to the judgment. *West Texas Utilities Company v. Irvin,* 165 Tex. 5, 336 S.W.2d 609 (Tex.1960); *Visage v. Marshall,* 632 S.W.2d 667 (Tex.App.—Tyler 1982, writ ref'd n.r.e.); *Rutherford v. Holmes,* 599 S.W.2d 668 (Tex.Civ.App.—Austin 1980, writ dism'd); *Dietz v. Dietz,* 540 S.W.2d 418 (Tex.Civ.App.—El Paso, no writ); *National Farmers Organization v. Smith,* 526 S.W.2d 759 (Tex.Civ.App.—Corpus Christi 1975, no writ); *Texas Optometry Board v. Lee Vision Center, Inc.,* 515 S.W.2d 380 (Tex.Civ. App.—Eastland 1974, writ ref'd n.r.e.); *McDuff v. Howard,* 430 S.W.2d 953 (Tex. Civ.App.—Amarillo 1968, writ ref'd n.r.e.); and, *Morgan v. Morgan,* 406 S.W.2d 347 (Tex.Civ.App.—San Antonio 1966, no writ).

■ In the case at bar, Saenz, as appellant, did not appeal the judgment in its entirety. It appealed only that portion thereof which awarded it $9,340.00, its actual damages, and which failed to treble such damages under the DTPA, and which failed to award it any attorney's fees. Big H., as cross-plaintiff, did not perfect an appeal from that part of the judgment which failed to award it any attorney's fees incurred in prosecuting its claim for indemnity against the Independent Executrix of the Estate of Bobby Rees Minter, Deceased, the cross-defendant in its action for indemnity. Therefore, the question of attorney's fees to Big H. is not before this Court for determination. Additionally, since Big H. failed to except to the failure of the trial judge to award attorney's fees or otherwise apprise the trial court of its dissatisfaction with the judgment, this point cannot be considered on appeal. *Time Insurance Agency, Inc. v. Grimes,* 613 S.W.2d 40 (Tex. Civ.App.—Texarkana 1981, no writ); and, *Varo, Inc. v. Kross,* 511 S.W.2d 719 (Tex. Civ.App.—Eastland 1974, writ ref'd n.r.e.). Big H.'s second cross-point is overruled.

Section 17.55A of the 1977 amendments to the DTPA provided:

"A person against whom an action has been brought under this subchapter may seek contribution or indemnity from one who, under the statute law or at common law, may have liability for the damaging event of which the consumer complains. A person seeking indemnity as provided by this section may recover *all sums* that he is required to pay as a result of the action, his attorney's fees reasonable in relation to the amount of work performed

in maintaining his action for indemnity, and his costs." (Emphasis Added).

Under the above statutory provision, Big H. is entitled to recover from Clara Mae Minter, as Independent Executrix of the Estate of Bobby Rees Minter, Sr., Deceased, *all sums* of money which it is required to pay Saenz. Such recovery includes the actual damages ($9,340.00) as trebled by us ($28,020.00), prejudgment interest on $9,340.00 at the rate of 6% per annum from January 1, 1980 to December 14, 1981, the date judgment was rendered, postjudgment interest at the rate of 9% per annum, attorney's fees awarded to Saenz, and costs.

The judgment of the trial court will be affirmed in part and reversed and rendered in part. Rule 434 Tex.R.Civ.P. That portion of the judgment which awarded a recovery to Saenz in its action against Big H. in the amount of $9,340.00 is reversed and judgment is rendered that Saenz Motors, plaintiff, do have and recover of and from Big H. Auto Auction, Inc., defendant, the sum of $28,020.00, together with interest on $9,340.00 thereof from January 1, 1980 to December 14, 1981, at the rate of 6% per annum, and interest on $28,020.00 from December 14, 1981 until the judgment is paid at the rate of 9% per annum; judgment is further rendered that Saenz do have and recover attorney's fees from Big H. in the amount of $3,500.00 for legal services furnished for the preparation and trial of this case, and an additional sum of $1,500.00 if an appeal is perfected to the Court of Appeals and Saenz is successful in that appeal, and an additional sum of $750.00 if an application for writ of error is filed in the Texas Supreme Court, irrespective of the disposition made by that Court.

Judgment is further rendered that Big H. Auto Auction, Inc., as cross-plaintiff in its action against Clara Mae Minter, as Independent Executrix of the Estate of Bobby Rees Minter, Sr., Deceased, cross-defendant, do have and recover, as indemnity, all of the sums of money that it is required to pay to Saenz Motors as a result of the suit brought against it by Saenz Motors, that is to say, that Big H. Auto Auction, Inc.,

defendant and cross-plaintiff, do have and recover from Clara Mae Minter, as Independent Executrix of the Estate of Bobby Rees Minter, Sr., Deceased, the sum of $28,020.00, together with interest on $9,340.00 thereof from January 1, 1980 to December 14, 1981, at the rate of 6% per annum, and interest on $28,020.00 thereof from December 14, 1981 until the judgment is paid at the rate of 9% per annum, and judgment is further rendered that Big H. Auto Auction, Inc., do have and recover from Clara Mae Minter, as Independent Executrix of the Estate of Bobby Rees Minter, Sr., Deceased, the sum of $3,500.00 for legal services furnished Saenz Motors for the preparation and trial of the action brought by Saenz Motors, Inc., against Big H. Auto Auction, Inc., and an additional sum of $1,500.00 if an appeal is perfected by Saenz Motors to the Court of Appeals and Saenz Motors is successful in that appeal, and an additional sum of $750.00 if an application for a writ of error is filed in the Supreme Court, irrespective of the disposition made by that Court.

The portion of the judgment which awarded costs to Saenz Motors in its suit against Big H. Auto Auction, Inc., and the portion of the judgment which awarded Big H. Auto Auction, Inc., a recovery against Clara Mae Minter, as Independent Executrix of the Estate of Bobby Rees Minter, Sr., Deceased, for all costs recovered by Saenz Motors is affirmed.

AFFIRMED in part and REVERSED AND RENDERED in part.