David RAMIREZ, Appellant,

v.

NATIONAL STANDARD INSURANCE COMPANY, Appellee.

No. 1278.

Court of Civil Appeals of Texas, Corpus Christi.

Feb. 28, 1978.

Glen A. Barnard, Harlingen, for appellant.

Paul Q. O'Leary, Brownsville, for appellee.

## OPINION

BISSETT, Justice.

This is a workmen's compensation case. David Ramirez, an unskilled laborer employed by a building contractor, brought this suit against National Standard Insurance Company (the workmen's compensation insurance carrier for Ramirez's employer) to recover for total and permanent incapacity allegedly sustained by him on or about September 17, 1975, while in the course of his employment. Suit was filed on May 20, 1976.

The case was tried to a jury. In response to the special issues which were submitted, the jury found: 1) that Ramirez received an injury on September 17, 1975; 2) that such injury was in the course of his employment; 3) that the injury was a producing cause of total incapacity; 4) that such total incapacity commenced on September 17, 1975, and ended December 4, 1975. Ramirez's motion for judgment non obstante veredicto was overruled April 7, 1977. Judgment was entered April 14, 1977 which denied Ramirez any recovery after December 4, 1975. His motion for new trial was overruled on May 3, 1977. Ramirez has appealed.

Ramirez asserts two general points of error on appeal: 1) the trial court erred in overruling his motion for judgment non obstante veredicto; and 2) the trial court erred in overruling his motion for new trial. In his argument, Ramirez first asserts that there is no evidence to support the jury finding that total incapacity ended on December 4, 1975; and, second, that such finding was contrary to the great weight and preponderance of the evidence.

A judgment notwithstanding the verdict is authorized under Rule 301, T.R. C.P., only when a directed verdict would have been proper. Special issue findings may be disregarded which are immaterial or have no support in the evidence. *Eubanks v. Winn,* 420 S.W.2d 698, 701 (Tex. Sup.1967); *Newitt v. Camden Drilling Company,* 552 S.W.2d 928, 931 (Tex.Civ.App.— Corpus Christi 1977, no writ).

On or about September 17, 1975, Ramirez was employed by Linbeck Construction Company, a general contractor who was then engaged in constructing the new First National Bank Building in Harlingen, Texas. Linbeck Construction Company had workmen's compensation insurance on its employees through National Standard Insurance Company, defendant-appellee. On the occasion in question, Ramirez was injured while he was carrying some 2″ × 6″ lumber across the third floor of the building when he slipped, twisted, fell, and caught his right foot and leg in a depression in the floor. He was taken to the emergency room of Valley Baptist Hospital, where he was examined and given treatment, includ-

ing an x-ray of the portion of his right leg below the knee. He was then discharged from the hospital. Shortly thereafter, he went to see Dr. Olcott, a general practitioner, who referred him back to the hospital where he stayed for eight to nine days and received treatment for an injury to the right leg. He did not receive any treatment for an injury to his back. He was then released from the hospital and continued seeing Dr. Olcott and also continued visiting the hospital twice a week for physical therapy to his leg. Ramirez testified that while undergoing treatment by Dr. Olcott he complained in Spanish about the pain in his back to Dr. Olcott's secretary, who acted as an interpreter. He further testified that Dr. Olcott neither examined his back nor treated an injury to it. Neither the hospital records nor the records of Dr. Olcott reflect any complaint by the plaintiff of back pain.

During the period when Ramirez was receiving treatment from Dr. Olcott, he (Ramirez) visited the local Legal Aid Office and filled out an injury report. In that report, no mention was made of a back injury; he complained only of his lower right leg. Ramirez, who does not speak English, also testified that the Legal Aid personnel questioned him, and during the questioning he told them about the pain in his back, but they did not write it down. The report was filled out by someone in the Legal Aid Office.

Dr. Olcott referred Ramirez to Dr. Atchison, an orthopedic surgeon, who saw Ramirez on November 28, 1975. Dr. Atchison testified that he asked Ramirez during the examination what areas were giving him trouble, and that he made no complaint of lower back pain. Dr. Atchison stated that his records did not show that Ramirez ever mentioned anything about his back. Ramirez, on the other hand, testified that he did complain of back trouble to Dr. Atchison.

Following Dr. Atchison's examination of the plaintiff, Dr. Olcott advised plaintiff that he could return to work on December 4, 1975. Ramirez replied he did not see how he could be sent back to work while he was on crutches and in such terrible pain. He then visited the office of Dr. Billner, a chiropractor, who treated him until February, 1976. In that month, Ramirez went to see Dr. Luis, a neurosurgeon. After examination, Dr. Luis determined that the vertebrae should be excised. He performed a laminectomy on March 3, 1976 to remove the problematic disc. About a week later, Ramirez was discharged from the hospital, but he returned on several occasions thereafter and complained of severe back pains. Dr. Luis then concluded that Ramirez was in pain, and that he could not engage in "much work" particularly strenuous "lifting, pushing, pulling, sitting for a long period of time or driving or standing a long period of time." A further operation, according to Dr. Luis, would under the present circumstances, be of little benefit. Ramirez testified that prior to September 17, 1975, he had not experienced any pain in his lower back and that since that time he had not received a new injury of any kind.

Josie Perez, plaintiff's stepdaughter, testified that prior to September 17, 1975, Ramirez would help with the chores around the house, but that since that date he is constantly in pain; that he was unable to do any work around the house except to water the plants; that he cannot sit down for long periods of time; that he regularly took pain pills; and that he had to go to bed because of pain.

The testimony of an interested witness generally does no more than create a fact issue. *Broussard v. Moon*, 431 S.W.2d 534 (Tex.Sup.1968). The only evidence of an injury to Ramirez was the accident which occurred on September 17, 1975. Ramirez's assertion that he complained of his back injury prior to December 4, 1975 must stand solely on his own testimony. This testimony is contradicted by the records of two physicians, and the testimony of one of them. Additionally, the records in the Legal Aid Office do not reflect that Ramirez complained of a back injury at the time he contacted that office. Dr. Olcott and Dr. Atchison each had an

opportunity to examine Ramirez thoroughly with regard to the accident and neither detected an injury to Ramirez's lower back. This evidence, in conjunction with a determination that Ramirez made no complaint concerning his back during the aforesaid period of time, certainly gives rise to an inference that no such injury occurred on that date (September 17, 1975). We hold that Ramirez's testimony is contradicted by other facts and circumstances and merely creates a fact issue. The jury resolved the fact issue adversely to Ramirez. This Court is bound by the jury's findings.

From a review of the entire record here presented, we conclude that there was factually sufficient evidence to support the conclusion that Ramirez did not suffer a back injury from the accident on September 17, 1975. See *Lopez v. Associated Employers Insurance Company,* 330 S.W.2d 522 (Tex.Civ.App.—San Antonio 1959, writ ref'd). There is ample evidence of probative value to support the jury's finding that Ramirez's total incapacity ended upon December 4, 1975. The finding is not against the great weight and preponderance of the evidence. Both points of error are overruled.

The judgment of the trial court is AFFIRMED.